IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| BUNNATINE H. GREEENHOUSE | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 07-0182 (EGS) |
| PETE GEREN, Secretary of the Army, et. al., | ) ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFF'S SURREPLY IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, Bunnatine H. Greenhouse, through counsel, with leave of the Court having been granted, hereby submits her surreply to Defendant's Motion for Partial Summary Judgment on the Pleadings or, in the Alternative, for Partial Summary Judgment.

## ARGUMENT

I.  **THE LEGISLATIVE HISTORY OF 5 U.S.C. §7702 AND OF THE POLICIES INVOLVED MANDATE THAT ALL APPEALABLE NONDISCRIMINATION CLAIMS, INCLUDING ALL WPA CLAIMS, THAT INCLUDE AN ASSOCIATED DISCRIMINATION CLAIMS SHOULD BE TREATED AS A UNITARY ACTION THAT MAY PROCEED BEFORE A DISTRICT COURT.**

It is beyond cavil that 5 U.S.C. §7702(a)(1)(B) permits a Federal employee to bring a "mixed case" complaint before the agency's EEO office when the underlying discrimination claim is coupled with a claim the employee "may appeal to the Merit

Systems Protection Board" and that upon exhausting the administrative remedies before the agency's EEO office bring the entire "mixed case" to district court.[1] In this regard, the "various statutory provisions of the [CSRA] and its legislative history [which] indicate a clear Congressional preference for combining various aspects of a single agency determination under one review proceeding, both in the administrative and judicial channels. . . Every court of appeals considering the issue of appropriate disposition of mixed cases has concluded that, in light of this language [5 U.S.C. §7702] and legislative history [of the CSRA], and of the policies involved as well, such cases mush be treated as a unit and must go first to the district courts. " *Williams v. Dept. of the Army,* 715 F.2d 1485, 1489 (Fed. Cir. 1983).

> Policy considerations also support unitary appeal rather than bifurcated treatment. From the standpoint of judicial economy, consideration of all issues by a single tribunal is clearly preferable . . . [T]o split the discrimination and nondiscrimination claims, which are closely related both logically and as a factual matter, would result in a tremendous waste of judicial resources while the district court and court of appeals twice consider the identical issues.[FN4]
>
>> FN[4] The difficulty involved in separating discrimination and nondiscrimination claims at the administrative level was brought to the attention of the Congress in a letter from the Comptroller General, which was reproduced in the House report on the CSRA:
>>
>>> FN[a] clear distinction between an equal employment and merit principle complaint is difficult, if not impossible, and employees frequently perceive their problems to be both. We believe that placing the adjudication of these complaints in different organizations will invite duplicate or two track appeals on the same issues simultaneously, or sequentially, to EEOC and MSPB. In

---

[1] In relevant part, 5 U.S.C. § 7702 provides that "[n]otwithstanding any other provision of law . . . [a Federal employee] who has been affected by an action which the employee or applicant may appeal to the Merit Systems Protection Board, and [where that employee] alleges that a basis for the action was discrimination . . [that] employee shall be entitled to file a civil action [in federal district court].

2

>       addition to wasting time, effort and money, this situation poses a very real potential for differing definitions of issues, inconsistent interpretations of laws, regulations and irreconcilable decisions.
>
>    H.R.Rep. No. 1403, 95th Cong., 2d Sess. 107 (1978).
>
>    The above considerations which led to consolidation at the administrative level apply equally to an appeal. Merely because separate findings are made by the MSPB on each issue does not mean that the issues are logically severable in reaching a conclusion on the propriety of an employee's removal. In a district court suit, the employee will charge that discrimination motivated the adverse action and the Government defense inevitably must include the merits of the administrative action to justify the action taken and negate discrimination. Petitioner has been removed only once and has proceeded through one administrative proceeding. It is well settled that a cause of action may not be split.
>
>    Finally, the interests of the litigant do not lead in the direction of bifurcation. While petitioner here seeks, indeed, urges an interpretation of the statute which would require dual routes of review, the expense and inconvenience of this procedure on private parties cannot be discounted. On the other hand, we do not believe that this decision will enable litigants to forum shop between district courts and this court by merely alleging discrimination. The district courts have ample authority to dismiss cases based on frivolous or sham discrimination claims. They need not transfer even legitimate merits issues where a litigant has made abusive use of the judicial system.

*Williams,* 715 F.2d at 1490-91; *accord, Chappell v. Chao,* 388 F.3d 1373 (11th Cir. 2004).

There is no question that Congress, when enacting the Whistleblower Protection Act ("WPA"), gave Ms. Greenhouse, pursuant to 5 U.S.C. §1221, the unquestioned right to file an individual right of action ("IRA") appeal with the MSPB. However, Defendants argue that the overarching principle of a unitary as opposed to bifurcated treatment of discrimination and nondiscrimination claims must be abandoned by interpreting the "may appeal to the Merit Systems Protection Board" language found in §7702 to somehow limit a Federal employee's ability to raise a whistleblower claim

3

alleging an *"adverse personnel action"* that is not *"directly appealed* to the MSPB." Defendants' Reply Brief at 9 (emphasis in original). In reaching this conclusion Defendants point to *Marren v. Dept. of Justice,* 51 MSRP 632 (1991). In *Marren*, the MSPB concluded that it lacks jurisdiction to hear all prohibited discrimination claims that are not directly appealable to the Board. *Id.,* at 639 ("Without the authority to adjudicate the merits of the underlying personnel action in an IRA complaint, the Board also lacks the authority to decide the merits of an allegation of prohibited discrimination raised in conjunction with an IRA whistleblower appeal."). Thus, while Defendants concede that Ms. Greenhouse's underlying discrimination claims flow from the same adverse action attributable to her WPA claim, i.e., her removal from the SES,[2] Defendants ask this Court to deny her the opportunity to raise all of her related claims as a unitary proceeding by bifurcating her whistleblower claim for exclusive resolution before the OSC/MSPB. Defendants' Brief at p. 2, Fn.2 and pp. 8-9. Beyond the fact that this Defendants' interpretation does not square with the legislative history, policy or statutory language of §7702, Defendants fail to see that the choice of bringing an IRA appeal to the Board represents the flip side of a Federal employee's choice to appeal an agency's EEO office ruling to EEOC. In both cases the decision to continue with the administrative machinery, as opposed to proceeding to federal district court, has adverse consequences because just as the MSPB is unable to proceed on certain discrimination claims, so too the EEOC is unable to proceed on any nondiscrimination claims the employee initially

---

[2] Defendants do acknowledge that Ms. Greenhouse, who was a SES employee at the time, had a right to an informal hearing before the MSPB in addition to her rights set forth in the WPA. To the extent the informal right to a hearing before the MSPB implicates an appeal contemplated under section §7702, Ms. Greenhouse timely perused her planned removal before the agency's EEO office. *See* Complaint at ¶9.

4

brought before the EEOC. This, then leaves a single avenue where a unified adjudication of all discrimination claims and all nondiscrimination claims can proceed as provided for pursuant to 5 U.S.C. § 7702.[3] In so doing, "Congress intended district court jurisdiction to extend to *all* claims in any case involving a charge of discrimination." *Williams,* 715 F.2d at 1488 (emphasis in original).

In sum, the CSRA represents "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of various categories of federal employees with the needs of sound and efficient administration," *United States v. Fausto,* 484 U.S. 439, 445, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988); with the "clear Congressional preference for combining various aspects of a single agency determination under one review proceeding, both in the administrative and judicial channels." *Williams,* 715 F.2d at 1489. Thus, as the CSRA grants SES employees the right to pursue whistleblower appeals before with the Board, and because "Congress intended the CSRA to provide additional, not decreased, protection for federal employees who blow the

---

[3] In *Marren*, the Board acknowledges that a Federal employee is entitled to bring all of his or her discrimination claims before an agency's EEO office and does not address a Federal employee's appeal rights flowing from proceedings initiated with an Agency's EEO office over which the MSPB has no authority. Thus, while *Marren* observes that because the Board is "[w]ithout the authority to adjudicate the merits of the underlying personnel action in an IRA complaint" it therefore necessarily "lacks the authority to decide the merits of an allegation of prohibited discrimination raised in conjunction with an IRA whistleblower appeal," *Marren,* 51 M.S.R.P. at 641, the decision does recognize that the EEOC must retain "jurisdiction over Federal employees' allegations of discrimination raised in conjunction with personnel action over which the board lacks jurisdiction" and that this "makes it the most suitable adjudicator of these complaints" as it is only through the EEO process that "the goal of consolidation in the enforcement of equal employment opportunity with regard to Federal employees" can proceed as "the legislative history of the WPA [indicates that] Congress gave no indication of any intent to change the balance of distribution of equal employment opportunity review or diminish the primary role afforded the EEOC in the Civil Service Reform Act of 1978." *Marren,* 51 M.S.R.P. at 641-42.

5

whistle," *Borrell v. U.S. Intern. Communications Agency,* 682 F.2d 981 (D.C.Cir.1982), and because "Congress gave no indication of any intent to change the balance of distribution of equal employment opportunity review or diminish the primary role afforded the EEOC in the Civil Service Reform Act of 1978," *Marren,* 51 M.S.R.P. at 641-42, it stands to reason that the efficient and sound administration of Ms. Greenhouse's discrimination and whistleblower claims available under the CSRA can pursuant to § 7702, proceed in unison before this District Court.

Finally, Defendants' suggestion that the role of the OSC is so integral to the exhaustion of administrative remedies as to provide a basis to deny Ms. Greenhouse the statutory right to combine her whistleblower and discrimination claims into a single federal district court action is misplaced. First, the role the OSC may play before a statutory right of appeal to the MSPB may be exercised is limited to a 120 day period, *see* 5 U.S.C. § 1214(a)(3)(B). This is the same statutory period during which an agency's EEO office must conduct an investigation and issue a final determination on a "mixed case" claim. However, unlike the administrative role played by the agency's EEO office which is charged with creating an administrative record that is to be filed with the court, Congress chose to explicitly provide that any findings or material prepared by the OSC "may not be admissible as evidence in any judicial or administrative proceeding, without the consent" of the whistleblower-appellant, *see* 5 U.S.C. §1214(a)(2)(B), nor can such material "be cited or referred to in any proceeding under this paragraph or any other administrative or judicial proceeding for any purpose, without the consent" of the whistleblower-appellant, *see* 5 U.S.C. § 1214(b)(2)(E). Still, Congress further curtailed the functioning of the OSC by forbidding it from taking any action before the Board

6

without first obtaining the consent of the whistleblower-appellant.  *See* 5 U.S.C. §1214(a)(4).  Finally, and most illuminating, is that the OSC is statutorily permitted to undertake the *same* course of action it would take whether or not an allegation of WPA violation is actually ever filed with the OSC.  5 U.S.C. § 1214 (a)(5) ("the Special Counsel may, in the absence of an allegation, conduct an investigation for the purpose of determining whether there are reasonable grounds to believe that a prohibited personnel practice (or a pattern of prohibited personnel practices) has occurred, exists, or is to be taken").  In fact, without ever receiving a whistleblower retaliation claim, the OSC, based solely on its own independent investigation, can seek "a stay of any personnel action" should the OSC "determines that there are reasonable grounds to believe that the personnel action was taken, or is to be taken, as a result of a prohibited personnel practice." 5 U.S.C. § 1214(b)(1)(A)(i).  Thus, the filing of a mixed case before an agency's EEO office can trigger the equivalent action on the part of the OSC should the OSC determine that it wished to look into the matter.  Moreover, if Congress concluded that the special functioning of the OSC was essential to the administrative remedies associated with the processing of a whistleblower claim then it stands to reason that the more severe adverse action that is directly appealable to the Board would require mandatory OSC involvement, which is not the case.

However, parsing out the nature of the role OSC's role following the passage of the WPA misses the mark because "in any case of statutory construction, our analysis begins with 'the language of the statute.' *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 475, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992). And where the statutory language provides a clear answer, it ends there as well. See *Connecticut Nat. Bank v.*

*Germain,* 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 119 S.Ct. 755 (1999).  In the instant matter is it clear that the courts had uniformly interpreted 5 U.S.C. §7702 to permit any an all discrimination and nondiscrimination claims flowing from the same adverse action to proceed to district court.  To the extent Congress wished to modify that conclusion it could have done so by amend § 7702(a)(1)(B) by inserting the word "directly" before the words "appealable to the Merit Systems Protection Board".  As such, based on the clear meaning of the § 7702 at the time the WPA was passed, there is no reason to read into the language a word that is not there.

Finally, as pointed out in Plaintiff's Reply brief, all of the federal courts who have considered whether a WPA claim may be brought to federal district court pursuant to § 7702 as part of a "mixed case" complaint have uniformly resolved that issue in the affirmative.  *See,* e.g., *Quinn v. West,* 140 F.Supp2d 725, 734 (W. ("the various statutory provisions of the [WPA] and its legislative history indicate a clear Congressional preference for combining various aspects of a single agency determination under one review proceeding, both in the administrative and judicial channels." *Christo v. Merit Sys. Protection Bd.,* 667 F.2d 882, 883 (10th Cir.1981). To force Plaintiff to bifurcate his case and return to the administrative process for further consideration of his WPA claim would frustrate principles of judicial economy and serve no useful purpose. *Woodman v. Runyon,* 132 F.3d 1330, 1342 (10th Cir.1997). The key to the application of these principles, however, is the employee's allegation that not only was he subjected to an adverse action because of his whistleblowing but also because of discrimination.").

8

## CONCLUSION

For the foregoing reasons and the reasons set forth in Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion for Partial Judgment of the Pleadings or, in the Alternative, for Partial Summary Judgment, it is respectfully requested that Defendants motion be denied.

                Respectfully Submitted,

                _____/s/_____
                Michael D. Kohn
                DC Bar No. 425617

                _____/s/_____
                David K. Colapinto
                DC Bar No. 416390
                KOHN, KOHN, COLAPINTO, LLP
                3233 P Street, NW
                Washington, DC 20007
                (Phone) 202-342-6980
                (Fax) 202-342-6984

Dated: January 22, 2008