**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| BUNNATINE H. GREENHOUSE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07-182 (EGS) |
| ) | |
| PETE GEREN[1], *et al.*, ) | |
| ) | |
| Defendants. ) | |

---

### <u>Memorandum Opinion</u>

Plaintiff brings this employment action against the Department of the Army, the United States Army Corps of Engineers, the Department of Defense, the United States, and several named officials at the above agencies. Plaintiff alleges employment discrimination on the basis of sex and race in violation of Title VII of the Civil Rights Act, unlawful retaliation under the Whistleblower Protection Act, and violations of the Privacy Act and the Administrative Procedure Act ("APA"). Pending before the Court is Defendants' Motion for Partial Judgment on the Pleadings or in the Alternative for Partial Summary Judgment. Defendants move for judgment in their favor on Plaintiff's APA, Whistleblower, and Privacy Act claims. The Court held a hearing on this Motion on May 29, 2008. For the reasons stated herein, Defendants' Motion is **GRANTED** on the

---

[1] By operation of Federal Rule of Civil Procedure 25(d)(1), Secretary Geren is automatically substituted as the proper party in place of former Secretary of the Army Francis Harvey.

Whistleblower and APA claims and **DENIED** on the Privacy Act claims.

## I.    Factual Background

The facts of this case are complicated and lengthy and involve allegations of corruption reaching very high levels of the United States government.  In this case, Plaintiff alleges serious violations of multiple civil rights statutes over a period of several years.  Below, the Court summarizes the facts related to those of Plaintiff's claims at issue in the instant motion, namely the APA, WPA, and Privacy Act claims.  The Court has excluded some facts and events pertinent to Plaintiff's race and sex discrimination claims, as those claims are not presently before the Court.

Plaintiff is a 63 year-old African American woman.  In 1997, she was appointed to be the Principle Assistant Responsible for Contracting ("PARC") of the US Army Corps of Engineers ("USACE").  She was the first African American female to serve in this position, which operates as the head of all contracting operations for the USACE and she was a member of the Senior Executive Service ("SES").  Compl. ¶¶ 28, 33.  Once installed in her position, Plaintiff contends that she was specifically instructed to "take aggressive action to terminate the casual and clubby contracting practices that were routinely occurring within the USACE."  *Id.* ¶ 41.  Accordingly, she required commanders in

2

the field to follow the Federal Acquisition Regulations and to
end preferential treatment of favored government contractors.
*Id.* ¶ 42-43.  Plaintiff contends that the commanders reacted
negatively to the fact that a "black woman had the power to
compel them to strictly adhere to contracting requirements."  *Id.*
¶ 46.  She further contends that as a result of her race and sex
she encountered continuous and recurrent hostility in the
workplace.  *Id.* ¶ 48.

Between 1997 and 2000, Plaintiff received outstanding
performance evaluations from Commanding General ("CG") Ballard,
who functioned as Plaintiff's "senior rater."  *Id.* ¶ 50.  In
2000, CG Ballard retired and was replaced by Lieutenant General
("LTG") Flowers.  Plaintiff avers that "commanders assumed that
Plaintiff would leave the USACE when CG Ballard, a black male,
retired." *Id.* ¶ 56.  After CG Flowers took over, Plaintiff
contends that the resentment for her requirement of strict
adherence to contracting law increased.  *Id.* ¶ 58.  She alleges
she was routinely belittled, and excluded from key meetings and
decisions.  She also alleges that the General Counsel routinely
diverted contracting actions that were not within his purview and
responsibility in order to circumvent her authority and that
commanders instructed their subordinate contracting officers not
to contact Plaintiff for guidance on contracting actions.  *Id.* ¶¶
62-64.  On March 5, 2002, Plaintiff hand-delivered a letter to CG

3

Flowers voicing concern over improper interference with the exercise of her official duties as the PARC, including interference with the proper review and execution of contracting documents. *Id.* ¶ 67. CG Flowers did not respond to her letter. *Id.* ¶ 68.

The heart of Plaintiff's claims surround the alleged serious improprieties in the awarding of a five-year no-compete contract to Kellogg Brown and Root ("KBR"), a subsidiary of the Halliburton Corporation, in late 2002 during preparations for this country's invasion of Iraq. Plaintiff contends that she was entirely excluded from the initial meetings and planning for the award of this contract, known as "Restore Iraqi Oil" ("RIO"). Federal regulations require that a "Justification and Approval" ("J&A") be prepared that sets forth factual and legal reasons for justifying the exception to competition for a government contract. *Id.* ¶ 82. When the contract exceeds $10 million, the J&A must be submitted to the PARC. *Id.* ¶ 83. Plaintiff alleges that the draft J&A for the RIO contract was prepared without any involvement from Plaintiff and that it was only presented to her for approval at a video conference where she learned that KBR had also been awarded two other major no-compete contracts. Plaintiff voiced her belief that multiple aspects of the contracting decisions were illegal and beyond the legal authority of the USACE. *Id.* ¶ 101. (Plaintiff avers that the Government

Accountability Office later determined that one of the awards was in fact illegal. *Id.* ¶ 102.) Specifically, Plaintiff objected to the inclusion of marketing and distribution of oil in the RIO contract, which would effectively give KBR a monopoly on the production and distribution of Iraqi oil. *Id.* ¶ 97. Plaintiff claims that Congressional action was required in order for the Corps to have the authority to oversee such production and distribution and therefore vigorously objected to this component of the J&A.

In response to her protest, the J&A presented to Plaintiff was changed. Plaintiff claims that her approval was conditioned on the explicit understanding that the no-compete RIO contract that was about to be awarded to KBR did not extend to marketing and distribution. *Id.* ¶ 102. Plaintiff maintains that she insisted that the contract be limited to a one-year duration. The final J&A ultimately presented to her for approval included a two-year base period with three one-year extensions. *Id.* ¶ 114. Plaintiff contends that she did not want to approve the contract as presented but claims that prosecution of the war presented her from further questioning the contract. Accordingly, she signed the contract but wrote on the original J&A itself, "I caution that extending this sole source effort beyond a one year period could convey an invalid perception that there is not a strong intent for limited competition." *Id.* ¶ 116.

Plaintiff alleges that after she voiced her objection on the J&A, her colleagues and superiors stopped speaking to her all together and her responsibilities were further usurped by other officials without the statutory authority or expertise to undertake them. *Id.* ¶ 122-23. Plaintiff contends that CG Flowers intentionally misled Congress in response to an inquiry from Congressman Waxman regarding the scope and duration of the RIO contract. Plaintiff argues that the inquiry should have been answered by her, but instead, CG Flowers responded and represented that the intended scope of the RIO contract included the production and distribution of Iraqi oil. Plaintiff claims that this assertion contradicted the explicit basis for her approval of the J&A in her capacity as the USACE PARC and Competition Advocate. *Id.* ¶¶ 128-29.

Plaintiff claims that on April 2, 2003, CG Flowers issued a memorandum seeking to remove Plaintiff from the Senior Executive Service ("SES") based on her "level 5" performance rating, the lowest rating on the scale. *Id.* ¶ 222. Plaintiff contends that the drastic change in her performance reviews after Flowers took over as Commanding General was the result of discrimination and retaliation. The level 5 rating was ultimately replaced with a level 4 rating of "Fair." *Id.* ¶¶ 223-25.

On December 11, 2003, the Defense Contract Audit Agency ("DCAA") issued a report indicating that KBR had overcharged the

6

government by $61 million for the purchase of fuel under the RIO contract. *Id.* ¶ 146. Plaintiff claims that CG Flowers decided to issue a waiver to KBR which dispensed with the requirement that KBR submit cost and pricing data to show that the overcharge was "fair and reasonable." Plaintiff contends that USACE conspired to keep this waiver a secret from Plaintiff because they knew she would not sign off on it, though under Army regulations her signature was required. Plaintiff alleges that the waiver was executed in a single day when Plaintiff was at home due to illness (but available all day by phone and fax) and that she did not learn of the waiver until she read about it in the national news. *Id.* ¶¶ 158- 179.

Plaintiff alleges she "engaged in protected activity" on February 12, 2004, when she delivered a letter to the Assistant Secretary of the Army detailing her concerns that contracting responsibilities were being improperly removed from her in an attempt to derail her career. *Id.* ¶ 181. On March 2, 2004, Plaintiff gave a letter to Assistant Secretary Bolton, advising him that the command structure of USACE was intentionally undermining the contracting process and that highly competent contracting officers were being removed from the USACE because they had exposed contact abuse. *Id.* ¶ 187. Plaintiff contends that she received no response to either letter. *Id.* ¶ 188.

CG Flowers gave Plaintiff a second "level 5" failing

performance evaluation for the period of October 2002 to September 2003.  On March 16, 2004, CG Flowers issued a memo to Assistant Secretary Brown seeking to remove Plaintiff for unacceptable performance based on the failed performance rating for the period of October 2002 through September 2003.  *Id.* ¶ 190.  On July 14, 2004, Assistant Secretary Bolton recommended that the final "failed" rating of Plaintiff be disapproved, but stated that assuming CG Flowers would replace that rating with a Level 4 "Fair" rating, then he approved of the decision to remove Plaintiff from the SES for two "less than successful" ratings within a three year period.  *Id.* ¶ 191.  Plaintiff contends that Assistant Secretary Brown's approval was required for her removal and that his approval was never given.  *Id.* ¶¶ 203, 205.

On July 1, 2004, LTG Carl Strock became the CG of the USACE. On October 5, 2004, CG Strock issued a memorandum styled as a "notice of removal" from the SES.  In response, Plaintiff, through counsel, submitted a written Request for Investigation to the Secretary of the Army alleging serious abuse related to the contracts awarded to KBR and the wavier request and also alleging that other officials were improperly controlling contracting matters that should have been under the control of the PARC.  The Army issued a letter on October 22, 2004 suspending any adverse personnel action against Plaintiff until a sufficient record was available to address the concerns set forth in the Request for

Investigation.  On June 3, 2005, CG Strock submitted a memo to the Secretary of the Army containing a purported "analysis" of Plaintiff's concerns.  *Id.* ¶ 212.  Plaintiff contends the analysis contained false and misleading information, that CG Strock didn't know who prepared it, did not authorize its preparation, did not know if it had been verified, and did not even read it before submitting it to the Secretary of the Army. *Id.* ¶ 216.

On June 27, 2005, Plaintiff voluntarily appeared before a Congressional committee on Waste, Fraud and Abuse in Contracting and testified about the alleged KBR contract abuse she witnessed. Three days before she appeared, Plaintiff avers that the General Counsel of the USACE conveyed to her that it would not be in her best interest to do so.  *Id.* ¶ 218.  Three weeks after she testified at the hearing, Plaintiff was removed from the SES and demoted to a GS-15.  *Id.* ¶ 220.

## II.  **Plaintiff's Claims**

Plaintiff alleges in Count I of her Complaint that the USACE "failed to obtain required approval to remove plaintiff from the SES" and that in doing so, her dismissal constituted unlawful reprisal for her protected EEO and WPA Activity.  In Count II, Plaintiff brings a Title VII claim alleging a hostile work environment based on race, sex and retaliation.  In Count III, Plaintiff alleges she was "discriminated against on the basis of

engaging in protected whistleblower activity under the WPA." *Id.*
¶ 257.  Count III also alleges that she was subjected to a
hostile work environment, discrimination, and retaliation in
violation of the WPA.  Plaintiff references her "mixed case
complaints" filed with the Army's Equal Opportunity
Employment("EEO") office.  Count IV details Plaintiff's claims
under the Privacy Act.  She alleges that the "analysis" and memo
prepared by CG Strock and submitted to the Secretary of the Army
"constitutes a confidential personnel record pertaining to
Plaintiff within one or more Privacy Act systems of records and
was used....as a justification to remove Plaintiff from the SES
and as USACE PARC." *Id.* ¶ 208.  Plaintiff contends that CG Strock
violated the Privacy Act by willfully and intentionally failing
to the greatest extent practicable to collect directly from
Plaintiff information that would have refuted the allegations set
forth in Plaintiff's Request for Investigation.  Plaintiff
contends that at no time prior to her removal was she contacted
or interviewed pertaining to her Request and that that failure
caused adverse determinations interfering with her rights and
benefits.  *Id.* ¶¶ 288-89.  In Count V, Plaintiff alleges that she
was improperly denied the opportunity to transfer to another
position in violation of Title VII, the Civil Service Reform Act
(CSRA), and the WPA.  She alleges disparate treatment because
another member of the SES was reassigned to another position, but

Plaintiff was terminated even though reassignment opportunities existed and Plaintiff requested them.

Plaintiff seeks declaratory and injunctive relief, an order of reinstatement, back pay, and benefits, compensatory damages for harm to reputation and career, $1000 for each Privacy Act violation, actual and compensatory damages under the Privacy Act, and costs and reasonable attorneys fees. Defendants have moved for Partial Judgment on the Pleadings or in the Alternative for Partial Summary Judgment on the APA, WPA, and Privacy Act Claims.

## III. Standard of Review

### A.    Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial. "The standard for reviewing a motion for judgment on the pleadings is the same as that applied to a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6)." *Rafeedie v. INS*, 795 F. Supp. 13, 18 (D.D.C. 1992). To survive a motion to dismiss, a complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," and give the defendant "fair notice of the claims against him." *Aktieselskabet AF 21 November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 17 (D.C. Cir. 2008) (quoting *Ciralsky v. CIA*, 355 F.3d 661, 668-70 (D.C. Cir. 2004) (quoting Fed. R. Civ. P.

8(a))). "A court deciding a motion to dismiss must not make any judgment about the probability of the plaintiff's success, for a complaint may proceed even if it appears that a recovery is very remote and unlikely, and a complaint may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations." *Id.* (internal quotations and citations omitted). Furthermore, "the court must assume all the allegations in the complaint are true (even if doubtful in fact), and the court must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged." *Id.* (internal quotations and citations omitted).

**B.    Summary Judgment**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. *See Celotex*, 477 U.S. at 323.

In determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v.*

12

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. In the instant case, however, there are no depositions, answers to interrogatories, and admissions on file, all of which are anticipated by Rule 56(c). *See Breen v. Peters*, 474 F. Supp. 2d 1, 7 (D.D.C. 2007)(Denying motion for summary judgment because discovery had not yet begun). Accordingly, the Court will treat Defendant's Motion only as one for judgment on the pleadings under the standard articulated above.

**IV.  Discussion**

**A.  APA Claims and Improper Parties Are Dismissed**

Defendants contend that Plaintiff's claims brought pursuant to the Administrative Procedure Act, 5 USC § 701 *et seq.*, must be dismissed because they are not a proper jurisdictional basis for the Complaint. Def.'s Mot. At 16. Plaintiff did not defend her APA allegations in her opposition. Accordingly, the Court considers them conceded and hereby dismisses the Plaintiff's APA claims. Defendants also argue that Plaintiff has named several improper parties in her complaint and Plaintiff has failed to argue otherwise. The Court agrees with Defendants that the only

appropriate defendants in this matter are the Secretary of the Army (for the discrimination and WPA claims) and the Department of the Army (for the Privacy Act claims).  All other remaining defendants, including Assistant Secretary of the Army Bolton, Lieutenant General Strock, Secretary of Defense Gates, the Department of Defense, the United States Army Corps of Engineers and the United States of America, are hereby dismissed from this action.

**B.    Plaintiff's Whistleblower Protection Act Claims Are Dismissed for Lack of Jurisdiction**

Defendants next argue that Plaintiff's WPA claims must be dismissed for lack of jurisdiction because Plaintiff failed to exhaust her administrative remedies.  Specifically, Defendants contend that Plaintiff was required to first take her WPA claims to the Office of Special Counsel (OSC) and that because Plaintiff failed to do so, the Court does not have jurisdiction to hear her WPA claims as part of a "mixed case" under 5 U.S.C. § 7702.  The Court agrees.

**1. Statutory Framework for the WPA**

The Whistleblower Protection Act, 5 U.S.C. § 2302, ("WPA"), provides most federal agency employees with protection against agency reprisals for whistleblowing activity, such as disclosing illegal conduct.  Under the procedures set forth in Title 5, an employee who believes she is the victim of an unlawful reprisal

must first bring her claim to the OSC, which investigates the complaint. *Stella v. Mineta*, 284 F.3d 135, 142 (D.C. Cir. 2002). If the OSC finds that there was a prohibited personnel action as defined by § 2302, it reports its findings to the Merit Systems Protection Board ("MSPB"), and it can petition the MSPB on the employee's behalf. *Id.* If the OSC finds no agency wrongdoing, then the employee herself may bring an action before the MSPB via an Individual Right of Action (IRA) appeal. 5 U.S.C. §§ 1221; 1214(a)(3); *Weber v. United States*, 209 F.3d 756, 758 (D.C. Cir. 2000). The MSPB's decision is appealable to the Federal Circuit. 5 U.S.C. § 7703. The Federal Circuit reviews the claim on the administrative record under the arbitrary and capricious standard. *Id.* at § 7701(c), 7703(b)(1). Under no circumstances does the WPA grant the District Court jurisdiction to entertain a whistleblower cause of action brought directly before it in the first instance. *Stella*, 284 F.3d at 142.

There are some instances in which an employee may bypass the OSC and appeal prohibited personnel actions, including some personnel actions arising under the WPA, directly to the MSPB. 5 U.S.C. § 1214(a)(3) provides that, "Except in a case in which an employee ... has the right to appeal directly to the Merit Systems Protection Board under any law, rule, or regulation, any such employee ... shall seek corrective action from the Special Counsel before seeking corrective action from the Board."

Accordingly, the converse is also true: where an employee is subject to an adverse personnel action that is directly appealable to the MSPB, the employee need not bring her claims to the OSC first.  Actions directly appealable to the MSPB include (1) a removal; (2) a suspension for more than 14 days; (3) a reduction in grade; (4) a reduction in pay; and (5) a furlough of 30 days or less.  5 U.S.C. § 7512.

While only the enumerated five actions are directly appealable to the MSPB, the WPA includes a much broader list of "prohibited personnel practices" outlawed by the Act.  For example, a negative performance evaluation in reprisal for whistleblowing is prohibited by the WPA, but it is not an action directly appealable to the MSPB under Section 7512.  Accordingly, an employee seeking to challenge a retaliatory evaluation would be required to go through the OSC before appealing to the Board. *See Cruz v. Dep't of the Navy*, 934 F.2d 1240 (Fed. Cir. 1991) (holding that WPA does not grant MSPB jurisdiction over reprisal claim that did not involve one of the five specified appealable adverse actions).

### 2.  Mixed Cases

5 U.S.C. § 7702 lays out the procedural path of a "mixed case."  A mixed case is an adverse personnel action subject to appeal to the MSPB coupled with a claim that the action was motivated by discrimination.  *Butler v. West*, 164 F.3d 634, 638

16

(D.C. Cir. 1999).  Section 7702 states that any person who "has
been affected by an action which the employee or applicant may
appeal to the Merit Systems Protection Board, and alleges that a
basis for the action was discrimination prohibited by [enumerated
statutes]" can bring her case before the Board and the Board will
render a decision on both the personnel action and the
discrimination claim.  As stated above, there are only five
adverse actions which are directly appealable to the MSPB.  *See* 5
U.S.C. § 7512.

     An employee who intends to pursue a mixed case has several
paths available to her.  At the outset, the aggrieved party can
choose between filing a "mixed case complaint" with her agency's
EEO office and filing a "mixed case appeal" directly with the
MSPB.  *Butler*, 164 F.3d at 638.  *See* 29 C.F.R. § 1614.302(b).  By
statute, the relevant agency EEO office and the MSPB can and must
address both the discrimination claim and the appealable
personnel action.  *Id.*  Should she elect the agency EEO route,
within thirty days of a final decision she can file an appeal
with the MSPB or a civil discrimination action in federal
district court.  *See* 29 C.F.R. §§ 1614.302(d)(1)(ii),
1614.302(d)(3), 1614.310(a).  If 120 days pass without a final
decision from the agency's EEO office, the same avenues of appeal
again become available: the complainant can file either a mixed
case appeal with the MSPB or a civil action in district court.

*See* 5 U.S.C. §§ 7702(e)(1)(A), 7702(e)(2); 29 C.F.R. §§
1614.302(d)(1)(I), 1614.310(g); 5 C.F.R. § 1201.154(b)(2).
*Butler*, 164 F.3d at 638.   When bringing a mixed case appeal in
district court, the discrimination claim will be subject to a *de
novo* trial, while the non-discrimination claim will be reviewed
on the administrative record created before the EEO office or the
MSPB, subject to the arbitrary and capricious standard.

     As noted above, a mixed case complaint is a complaint of
employment discrimination filed with a federal agency's EEO
office related to or stemming from an action that can be appealed
to the MSPB.   *Butler*, 164 F.3d at 638 n. 7 (citing 29 C.F.R. §
1614.302(a)(1)).   A mixed case complaint can be appealed to the
district court or the MSPB within 30 days of a final decision
from the agency.   This is the route Plaintiff attempts to take in
the instant case.   Plaintiff filed an EEO claim at the USACE
alleging both sex and race discrimination in violation of Title
VII and challenging her removal from the SES under the WPA.   She
argues this was a "mixed case complaint."   The EEO office
dismissed her WPA claims for failure to state a claim, and the
record does not indicate any more specific justification for the
dismissal.   Plaintiff claims that because she timely filed a
mixed case complaint with her agency's EEO and received an
unfavorable decision, she can now bring all her claims as a mixed
case appeal in this Court pursuant to Section 7702.   Defendants

18

counter that Plaintiff never properly filed a mixed case complaint because she did not suffer an action that can be appealed to the MSPB, and therefore Section 7702 does not give her a right of action to bring the WPA claims with her Title VII claims in this Court.

While removals, reductions in pay, and reductions in grade are all directly appealable to the MSPB, Defendants contend that Plaintiff's removal from the SES is not.  Relying on 5 U.S.C. § 3592(a)(2), Defendants argue that Congress specifically withheld the right to appeal performance-based removals from the Senior Executive Service to the MSPB.  The relevant portion of the statute provides,

> Except as provided in subsection (b) of this section, a career appointee may be removed from the Senior Executive Service to a civil service position outside of the Senior Executive Service--
>
> (1) during the 1-year period of probation under section 3393(d) of this title, or
>
> (2) at any time for less than fully successful executive performance as determined under subchapter II of chapter 43 of this title,
>
> except that in the case of a removal under paragraph (2) of this subsection the career appointee shall, at least 15 days before the removal, be entitled, upon request, to an informal hearing before an official designated by the Merit Systems Protection Board at which the career appointee may appear and present arguments, but such hearing shall not give the career appointee the right to initiate an action with the Board under section 7701 of this title, nor need the removal action be delayed as a result of the granting of such hearing.

5 U.S.C. § 3592(a)(2).  Therefore, because Plaintiff's removal

from the SES is not "an action directly appealable to the MSPB,"

Defendants contend she was required take her WPA claims through

the OSC administrative process and she cannot now bring her WPA

claims as part of a "mixed case."

Plaintiff argues vigorously that "all federal courts that

have considered whether a WPA claim may be brought to federal

district court pursuant to § 7702 as part of a "mixed case

complaint" have uniformly resolved that issue in the

affirmative."  Pl.'s Surreply at 8.  Plaintiff also relies on

*Williams v. Dep't of the Army*, 715 F.2d 1485 (Fed. Cir. 1983) to

support her argument that judicial economy requires hearing the

WPA claim with the discrimination claim.  She contends that

Section 7702 invokes a "clear Congressional preference for

combining various aspects of a single agency determination under

one review proceeding, both in the administrative and judicial

channels." *Id.* at 1489.  Compelling as the economy argument may

be, the heart of the issue in this case is not whether WPA claims

can be included as a part of a "mixed case" complaint or appeal,

but rather, whether the adverse personnel action of which

Plaintiff complains can be prosecuted at all via either

mechanism.  Jurisdiction under 5 U.S.C. § 7702 is predicated

first on the action taken against a plaintiff, and without an

appealable action, Plaintiff's discrimination claims do not

provide a vehicle for her WPA claims.  In each case upon which
Plaintiff relies to support her argument to the contrary, the
plaintiff in question has precisely what this Plaintiff lacks: an
adverse action appealable to the MSPB.  *See e.g., Christo v.
Merit Sys. Protection Bd.*, 667 F.2d 882 (10th Cir. 1981)
(Termination appealable to the MSPB); *Quinn v. West*, 140 F. Supp.
2d 725 (W.D. Tex. 2001) (Involuntary transfer and resultant
reduction in pay appealable to MSPB).

   Accordingly, even though Plaintiff has discrimination claims
and WPA claims, she does not have an action appealable to the
MSPB on which the Court can base its jurisdiction.  The action
affecting Plaintiff (performance based removal) cannot be
appealed to the MSPB and therefore there is no "mixed case."
This issue was discussed explicitly in *Cruz v. Dep't of the Navy*,
934 F.2d 1240 (Fed. Cir. 1991) (finding no mixed case where
plaintiff alleged Title VII and WPA claims but notice of proposed
removal was not adverse action appealable to MSPB).  There, the
Federal Circuit expressly held that the MSPB has appellate
jurisdiction over only the five adverse actions enumerated in 5
U.S.C. § 7512, and without "an appealable adverse agency action,
the case is not a mixed case."  *Id.* at 1243, 46.  The Court
specifically noted that the WPA is not an independent source of
Board jurisdiction.  *Id.* at 1245.

   Congress provided that the only avenue of relief for a

21

performance-based removal from the SES is an informal hearing before the MSPB.  The statute clearly states that this hearing "does not give the appointee the right to initiate an action with the Board under Section 7701."  *See* 5 U.S.C. § 3592(a)(2).  In reaching the same conclusion, the MSPB commented recently, "[i]t is highly significant that Congress conferred on non-executives the right to appeal performance-based actions to the Board under section 7701, yet in the very same piece of legislation created a new corps of top managers, the SES, and chose not to allow them to appeal performance-based removals under section 7701." *Charrow v. Federal Retirement Thrift Inv. Bd.*, 102 M.S.P.R. 345, 349 (MSPB 2006).  The Board definitively concluded that through Section 3592(a), "Congress *did not* confer a similar right of appeal on senior executives removed for poor performance." *Id.* (emphasis in original).  The Court agrees.  Accordingly, it is clear that performance-based removals from the SES are not appealable to the MSPB, and without an action appealable to the MSPB, this Court has no jurisdiction to hear Plaintiff's WPA claims under 5 U.S.C. § 7702.

Plaintiff also makes the novel argument that her case constitutes a "mixed case" according to the plain language of Section 7702 because she ultimately *could have* appealed her WPA claims to the MSPB had she first presented them to the OSC.  5 U.S.C. § 1221 provides that if the OSC finds no agency

22

wrongdoing, or fails to act within a specified time, then the employee herself may bring an action before the MSPB via an Individual Right of Action (IRA) appeal.  Accordingly, Plaintiff contends that because she *could have* appealed an OSC decision on her WPA claims to the MSPB via an IRA appeal, then she is entitled to bring those claims now as a part of a mixed case.

Unfortunately for Plaintiff, this argument is also without merit.  As Defendants argue, even if Plaintiff could create a mixed case via her opportunity to pursue an IRA appeal, the fact is, she did not avail herself of that opportunity, and "her failure to exhaust her WPA claims before the OSC eliminates this theoretical basis for a mixed case complaint and defeats this Court's jurisdiction over Plaintiff's WPA claims."  Defs.' Reply at 6.  Furthermore, the MSPB has repeatedly held that an IRA appeal is not subject to Section 7702.  *Stoyanov v. Dep't of the Navy*, 2007 MSPB LEXIS 7195 (M.S.P.B. 2007).

In sum, it is clear that this Court lacks jurisdiction to entertain a Whistleblower action brought directly before it in the first instance.  *Stella*, 284 F.3d 142.  It is equally undisputed that this Court's jurisdiction to hear WPA claims as part of a "mixed case" under 5 U.S.C. § 7702 requires that the Plaintiff have suffered an "action appealable to the MSPB."  The Court finds that Plaintiff's performance-based removal from the SES is not such an action by the terms of 5 U.S.C. § 3592(a), nor

23

does the mere possibility of an IRA Appeal constitute an appealable action. Accordingly, this Court lacks jurisdiction over Plaintiff's WPA claims. Defendants' Motion for Judgement on the Pleadings with respect to the WPA claims is **GRANTED** and those claims are hereby dismissed from this case.

### C.    Defendants' Motion is Denied as to the Privacy Act Claims

Plaintiff alleges that the Department of the Army is liable for violations of the Privacy Act for the failure to collect information directly from Plaintiff when the information resulted in adverse determinations about her rights, benefits and privileges, and for the failure to maintain accurate records to assure fairness to plaintiff. *See* 5 U.S.C. §§ 552a(e)(2) and (e)(5). "To make out a damage claim under the Privacy Act, the plaintiff must prove a "causal relationship between the allegedly erroneous record and an adverse determination based on that record." *Hubbard v. EPA*, 809 F.2d 1 (D.C. Cir. 1986) (citing *Clarkson v. IRS*, 678 F.2d 1368)). Plaintiff contends that the memorandum prepared by LTG Strock in support of her removal from the SES was inaccurate, contained false information, and intended to mislead the Secretary of the Army as to the status of the investigation into Plaintiff's concerns about the contracting abuse and retaliation. Pl.'s Reply at 15. Plaintiff also alleges that Defendants violated the Privacy Act by failing to

24

collect information directly from Plaintiff under subsection (e)(2) and that this failure created inaccurate records which resulted in adverse action.

While Defendants argue that Plaintiff is improperly using the Privacy Act to challenge a personnel decision subject only to the CSRA, the Court finds that Plaintiff has alleged facts that, if true, could make out a claim of an adverse personnel decision based upon an erroneous record in violation of the Privacy Act. Accordingly, Defendants' Motion for Judgment on the Pleadings is **DENIED** as to the Privacy Act claims.

## IV. Conclusion

For the reasons stated herein, Defendants' Motion for Judgment on the Pleadings is **GRANTED** in favor of Defendants on the APA and WPA claims.  Those claims are hereby dismissed from this action.  It is further ordered that the improperly named defendants are also dismissed from this action.  Finally, Defendants' Motion is **DENIED** as to the Privacy Act claims.  An appropriate Order accompanies this Memorandum Opinion.


Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **September 2, 2008**